Ladies and gentlemen, please rise. This court is now in session. You may be seated, and the clerk will call the next case. 3-20-0-1-1-9. Equal in the State of Illinois. Amplified by Jamie Bellows v. Gibson v. Mark Fisher. Mr. Fisher, you may proceed. Good afternoon, your honors. May it please the court, counsel. I'm Mark Fisher with the Appellate Defender's Office, and I represent the defendant, in this case, Sherman Gibson. This is an appeal from an order denying Mr. Gibson leave to file a successive post-conviction petition. The two issues were raised in that petition. The primary issue asserted a claim of actual innocence. In People v. Washington, the case in which the Illinois Supreme Court stated that a claim of actual innocence can be brought in post-conviction proceedings, the court stated that to ignore a claim of actual innocence would be fundamentally unfair, and that imprisonment of the innocent is so conscience-shocking as to trigger operation of substantive due process. In this successive petition, Mr. Gibson brought forth new evidence that he was unable to obtain previously. It was evidence that contradicted the prosecution's case against him. As a result of the order denying leave to file that petition, he was prevented the opportunity of proving his claims in further post-conviction proceedings. He is therefore asking this court today to reverse the order denying leave to file the successive petition and to remain at his cause for second-stage proceedings, including the appointment of counsel. Now, in People v. Edwards, the Illinois Supreme Court said that in order to be allowed to bring a claim of actual innocence in a successive petition, a petitioner must state a colorable claim of actual innocence, and that's a higher bar than the gist of a claim standard. Two years ago, in People v. Robinson, the Supreme Court clarified what is meant by a colorable claim of actual innocence. And among other things, the court in Robinson said that ultimately the question is whether the evidence supporting the petition casts the trial evidence in a different light and undermines confidence in the judgment of guilt. The court also stated that new evidence need not be entirely dispositive to be likely to alter the result on retrial. Probability rather than certainty is the key, and that's especially important here because in his order denying Mr. Gibson leave to file the successive petition, the judge stated that Gibson had not shown that there would definitely be a different result on retrial. At the leave to file stage, petitioner need not make a showing. That comes later. And again, it's probability, not certainty. At the leave to file stage, the question is did he present a colorable claim of actual innocence. So, of course, in order to make that determination, your honors must consider the evidence presented at trial as well as the evidence presented in support of the successive post-conviction petition. Now, the evidence presented at trial was not especially strong. This was not an open and shut case. Mr. Gibson was prosecuted for the first-degree murder of fellow prison inmate Leon Smallwood, and he was actually tried three times. First time in 1986 culminated in a hung jury. Second time, 1987, he was found guilty. He was sentenced. His conviction was reversed and remanded by the Illinois Supreme Court. The third trial was in 1992. This time, the jury found him guilty. He was sentenced to a term of life imprisonment. So I will now briefly talk about some of the evidence that was presented at trial below, particularly in the third trial, although the prosecution's case was largely the same at the three trials with some important differences. The primary prosecution witness at all three trials was an inmate named Larry Eckstein. Eckstein testified that on the morning of Smallwood's murder, he happened to pass by Smallwood's cell, and he saw four people congregated there, all inmates. Smallwood, a man named Robert Loftin, who was separately charged and prosecuted in this case, another inmate named Vernon Hex, and a fourth inmate he could not identify. At the first trial, he did not identify Sherman Gibson as that fourth person. At the second trial, when asked if he could identify the fourth person, he asked Mr. Eckstein to remove his eyeglasses. Mr. Eckstein, or excuse me, Gibson did so. Eckstein then said, that is the fourth person I saw inside Smallwood's cell that morning. Apparently, Mr. Gibson owned the same model of glasses that over the years have precluded numerous fictional characters from being able to identify Clark Kent as Superman. In addition, Mr. Eckstein testified that shortly after that, he heard a commotion, what sounded like fighting coming from Smallwood's cell. So he walked back into the front of the cell to see what was going on. He claimed that the first two trials, there was a sheet or curtain hanging in front of the cell he could not see inside. The third trial, he testified similarly, but lo and behold, at the third trial, he said while he was standing in front of the cell, that curtain or sheet fell, allowing him to see inside, allowing him to see Gibson and Lofton attacking Smallwood. At the third trial, Eckstein's testimony was impeached with his prior inconsistent testimony. From the first trials, with prior statements he gave investigators, he was also impeached with prior convictions, and with the fact that after he made statements to investigators, he was transferred out of Stateville Correctional Center, a maximum security institution, to a medium security institution. And in fact, prior to the first trial, he was released from the Department of Corrections altogether. A second inmate witness testified at the various trials, a man named Henry Burrell. Burrell did not claim to see an attack at all that morning. He merely testified about some statements that Gibson allegedly made to him at some point after the incident. But frankly, those statements were open to interpretation. One might say they suggested some knowledge on Gibson's part about what happened or about why it happened, but frankly, it was open to different interpretations. The testimony was somewhat nebulous. He, too, was impeached with prior convictions, prior statements, and the fact that he, too, was transferred out of Stateville after making statements to investigators. Now, the only other evidence against Gibson at the three trials was blood evidence. There were blood-stained items found in Smallwood Cell after the incident. But there was no DNA testing back at that time, simply blood type. And so based on the blood types of the various individuals, the most that the lab experts could say is that some of the blood here and there may was or perhaps was not consistent with Gibson and or Loftin and or Smallwood. And the last thing the prosecution presented was some testimony about motive. The problem here, the jury heard various different motives presented. This testimony was somewhat nebulous. It was disputed. So in short, the evidence against Gibson at these various trials, although this court said in the 1992 appeal following the third trial that the evidence was sufficient to prove guilt beyond a reasonable doubt, the evidence was not open and shut. It was not overwhelming. And the stand-on appeal in its brief does not say that it was overwhelming. Okay, moving on to the evidence presented in support of the petition. Now, Mr. Gibson acknowledges that some of the affidavits presented in support of this successive petition had been presented previously, in support of previous successive petitions filed by Mr. Gibson. And in those cases, he was denied leave and this court affirmed. But here we have two additional affidavits, very compelling, very different from what was presented previously. One of those affidavits came from an inmate named Ivory Lloyd. Mr. Lloyd stated in his affidavit that he grew up on the west side of Chicago with an inmate, later an inmate, named Willie Lyons, that he had a conversation with Lyons sometime after the murder of Smallwood. And presumably because of their boyhood relationship, Lyons confided in Lloyd that Lyons murdered Smallwood and that Sherman Gibson had nothing to do with it. That was actually consistent with a prior affidavit that Gibson had submitted. And I would be remiss if I didn't tell the court that in all three trials, Gibson said he had nothing to do with it. I talked about what he was doing that morning, including at one point making a telephone call to his mother, apparently at the proximate time that Smallwood was killed, but he consistently denied any involvement. In a prior affidavit, he said when he was making the phone call, he actually saw Lyons exiting Smallwood's cell, holding a shank and with some blood on his clothing. That when Lyons saw Gibson looking at him, Lyons approached Gibson and threatened him with his life if he ever said anything to anybody about what he had just seen. And Gibson alleged that Lyons was an influential gang member at Stateville at that time. So now we have a consistent corroborating affidavit from Lloyd saying Lyons admitted doing it, that Gibson had nothing to do with it. This is very different from anything that was presented at trial or in the prior or post-conviction petitions. And then there was a second affidavit from an inmate named Marvin Bryant, saying he had conversations with Henry Burrell at some point after the fact, that Burrell told him he lied when he testified at Gibson's trials because that was his ticket out of Stateville. This new evidence that plainly contradicted the prosecution's theory of the case, contradicted the main prosecution witnesses, particularly Eckstein and also Burrell. It cast that evidence in an entirely new light and certainly must give rise to doubt in the confidence in the jury's verdict of guilty. For all of these reasons, Mr. Gibson should have the opportunity to prove up his claims at further – during further post-conviction proceedings. He has stated a colorable claim of actual innocence sufficient to proceed. And for those reasons, respectfully, Mr. Gibson asks Your Honors to reverse the order denying leave and to amend his clause to second-stage proceedings, including the appointment of counsel. Mr. Fisher, you said he was unable to present these affidavits earlier. Where would I find that in the pleadings that he had filed? Right. So all of – I believe in the opening brief, if not the opening brief, I know in the reply brief, I know it, that the two new affidavits are the ones from Mr. Lloyd and Mr. Bryant, that all the various other affidavits had been presented previously. No, I understand that. You were very clear about that, but you said that they were unable to be presented. Why is it that – Oh, I'm sorry. In terms of the two new affidavits. Yes. Right, the two new affidavits. So it's important, of course, to recall here that Mr. Gibson has been in the Department of Corrections low these many years. He – on top of that, he doesn't have money, doesn't have the ability to hire investigators, so he's pretty much at the mercy of people coming to him. Now, we have the dates of the affidavits, and the dates of these two affidavits are dated after the filing of the previous successive post-conviction petition. Now, I would acknowledge that perhaps Mr. Gibson could have been maybe a little bit clearer. It doesn't say when he specifically talked to these individuals. One would think not long before they executed the affidavits. One of the individuals, I believe it was Bryant, said that he didn't – when he spoke to Burrell, he didn't even know Mr. Gibson at that time. It was only later that he found himself in the same institution with Gibson, and then, oh, I have this information that's important. And so then it was delayed. And so certainly the record suggests that this is – that these newest affidavits could not have been presented previously. But there's nothing specific that you can point me to alleging the reason why? Again, other than Mr. Gibson being in prison, he's at the mercy of people coming to him. Sure. In the pleadings themselves. Right, right. In the record. That's correct. And I would submit to Your Honor simply that is something that could be explored at second stage if the judge and the parties felt it reasonable to do so, and no doubt would be reasonable to do so. Thank you. Any other questions? No. Thank you, Your Honor. Thank you, Mr. Fisher. Ms. Bella. Good afternoon, Your Honor. May it please the Court. Counsel. My name is Jamie Bella, and I'm here on behalf of the people of the state of Illinois. There's a single issue, as counsel noted before the Court in this case, and it is whether the trial court properly denied defendant's motion for leave to file his fifth successive post-conviction petition, sixth petition overall. Such claims are reviewed de novo. Defendant argues that leave should have been granted because defendant's petition set forth an arguable, I'm sorry, colorable claim of actual innocence. The people request that this Court affirm the trial court's order denying defendant's leave to file on the basis that this Court has previously held that res judicata bars the presentation of this specific claim, and that finding came under this exact petition, which was refiled in this case from a prior case in 2017. In the alternative, if this Court does not find that res judicata bars the presentation of this claim, the people ask that this Court find that defendant's petition does not set forth a colorable claim of actual innocence. Turning to the issue of res judicata, it's important to note first that the petition at issue in this case is the identical petition that was filed in 2017, verbatim with the exception of a single paragraph, paragraph 11, which states in its entirety that see all the affidavits in this petition, also see court order, end quote. The first of these two duplicate petitions, as I stated, was filed on October 14th of 2017. That might be 2004. I apologize if that's incorrect. The trial court denied leave to file based on the finding that the defendant failed to allege a properly alleged cause in prejudice. Defendant appealed that denial, and this Court agreed with the trial court's finding and OSAD's motion to withdraw from that case. And specifically, significantly, this Court additionally found that the defendant's claim, quote, suffers from the additional fatal flaw of being barred by the doctrine of res judicata, as he argued on direct appeal that the State should have known that Epstein's testimony was false, end quote. Looking at the petitions, the two petitions that were filed, in paragraph 6, in both petitions, the defendant argues that the prosecutor knowingly used perjured testimony to obtain a conviction. The prosecution knew or should have known that the testimony was false and prejudice resulted. The testimony that defendant describes with respect to Larry Epstein, I don't know if I'm saying that correctly, Epstein has been the basis of each of these appeals. This Court first addressed the issue of whether the State knowingly offered perjured testimony from Larry Epstein in 1992 in defendant's direct appeal. Since that time, multiple petitions alleging the same underlying theme with respect to Larry Epstein's testimony has been repeatedly alleged and appealed and then refiled in subsequent petitions, leading us to this case where the same claim is raised, this time verbatim, with the exception of that single paragraph I indicated previously. So the trial court in this case, again, denied leave to file. In the court's – in the transcript of the court's findings with respect to its denial, it stated that the defendant had failed to show that there would be a substantially different outcome at trial. Now, I understand that defendant alleges on appeal that his petition sets forth a culpable claim of actual innocence. However, I think that the existence of a claim of actual innocence itself is something that defendant is asking this Court to eke out based on arguments that are being raised on appeal when no such claim actually appears on the face of the petition itself. And the petition itself, which was already denied and appealed in 2017, was accepted by the trial court and by this Court as a petition that failed to allege cause and prejudice. Cause and prejudice is one of the two bases for a successive post-conviction petition, with the other being actual innocence. And in order to succeed on the claim alleging – or under cause and prejudice, the defendant needed to allege cause for not filing this claim previously, and prejudice in that he was prejudiced by the inability to bring that claim. So in this petition itself, the only reference that there is at all with respect to either type of claim is that prejudice resulted. And that appears in paragraph 6, where he states that the testimony was false and the State should have known and that he was therefore prejudiced. With respect to the affidavits that defendant points to on appeal, the two new ones specifically, each other affidavit included with the petition has been before this Court, and in various holdings I can pull them up specifically. Okay, so with respect to a Festus Brown – I actually don't think that one was included on this last appeal. The affidavit of Eugene Horton was found to be – to, on its face, not present newly discovered evidence because there was nothing to indicate that that witness did not have that information at the time of the defendant's trial. Likewise, with defendant's own petition, this Court has already ruled that those affidavits from defendant set forth information that has been in the defendant's possession since the day of his trial and previously. And with respect to the new petition, one of the affidavits specifically states that the information was acquired in 1988 in a prison yard, and none of the petitions, all of them combined, address the claim that's actually raised in defendant's petition, which is that the State knowingly presented perjured testimony from the witness ex-sign. So considering that this Court has already looked at this very petition, these very allegations, and under the very same context that they're being raised now, and this Court found that these claims were res judicata, the State submits that that claim is barred by the doctrine of res judicata. Also, regarding the State's alternative argument, the State does not believe that the new petitions, even if this Court were to accept this petition now as a petition setting forth a claim of actual innocence, that the two new petitions do not set forth information that is not, that is newly discovered, that is not cumulative of other evidence, or of a nature that's so conclusive that it could have a different impact at trial. Specifically, the affidavit of Marvin Martin states that the defendant, or that, yeah, the defendant Gibson is alleged to have no involvement in the murder, which has been the allegation that has been raised in each petition by each affidavit that's been presented, including the defendant's own. And while the nature of the author of the affidavits has changed, the underlying theme from all of these petitions since 1992 has remained the same, and this Court has repeatedly rejected that claim. In defendant's fourth post-conviction petition, the defendant actually raised a claim of actual innocence, and raised this claim in that petition under a theory of actual innocence. So defendant's allegation now on appeal is that he did not have the ability because he's been in prison his whole life, the knowledge or the ability of what was necessary to raise a claim of actual innocence, where the record itself demonstrates that defendant has previously done exactly that. So the claim now that he didn't have that facility to do so now is in some way related to an inability I think is frivolous and untrue, and I think that the record demonstrates that. And unless the Court has any other questions, the State will stand on its arguments raised in its brief. I don't believe there are any, so thank you, Ms. Bell. Thank you. Mr. Fisher for rebuttal. Thank you, Your Honors. Beginning, responding back again once more to Justice Petal's question, certainly there would have been, this was not the type of situation where the defendant would say, have motive to lay in the weeds, you know, not bring forth these new affidavits. This man's been fighting for his innocence since he was originally tried in the mid-1980s. He's still in life sentence. There would be no motivation to have evidence available to him to present to court to make a stronger claim years ago, but decide for some reason not to present it. You present what you've got, and he's filed several petitions, but he's come across new information. So this is not a situation where laying in the weeds would have done him any good. Oh, I have this information from these people, but I'll hold on to it for now. That doesn't seem to make a whole lot of sense. But on top of that, I don't mean to demeanor out this question, just delve in further into, this is also a man who is not well educated. He's been in prison most of his life. It is this type of petitioner why, not putting that well, but the courts have said that pro se petitioners should be given more leeway than, say, petitions followed by attorneys. And Mr. Gibson, I think, is a very good example of that. The state argues that, and they do in their brief as well, that Mr. Gibson, this petitioner, never said the magic words, actual innocence is a prosecutorial misconduct. And that is true. But the important thing is the substance, is the content. And again, I think this goes to Mr. Gibson not being a lettered individual, so to speak. He said the prosecution engaged in misconduct because they called these witnesses who were liars. Well, what did they lie about? Lied about his alleged involvement. Well, he's saying I have new evidence showing I'm not involved. I'm reminded a bit, I think it was Shakespeare, maybe he said a rose by any other name smells as sweet. He didn't use the magic words, but if we look at the substance, it's actual innocence. That's what it is. He's always said he's innocent. He presents these affidavits strongly indicating that he's innocent. And these affidavits are different, are more compelling, are more revealing than the affidavits he presented in support of his prior petitions. Now, the state also argues, at least in its brief, the principle of finality, because this has been going on for a long time. And there is something to be said for that. Again, Mr. Gibson's at the mercy in prison, people coming to him with information. But People v. Washington, I quoted from the majority earlier, Justice McMorrow in her specially concurring opinion stated, the policy of finality, as asserted by the state in that case, and again asserted by the state here, must yield as a matter of fundamental due process to the manifest justice that would result from the continued incarceration of a demonstrably innocent person. Now, I cannot stand here before your honors today and tell you whether or not Mr. Gibson is innocent. I don't have personal knowledge. But for the purpose of this case and what your honors must decide, the question is, looking at the petition, supporting affidavits, taking those allegations as true at the leave to file stage, did Mr. Gibson state a colorable claim? Your honors don't have to decide it, in a sense. The only question is, should the cause be remanded so he has the opportunity to prove his innocence? There is sufficient information in this petition. And therefore, once again, respectfully, Mr. Gibson asks your honors to reverse the order denying leave and to remand this cause for second-stage proceedings, including the appointment of counsel. I just have one question. We talk about there are new players that are involved. But when we talk about new evidence or newly discovered evidence, is it enough that we have a new person saying they talked to someone that we know was there? Or is there a requirement that there is some new – for instance, Ivory Lloyd, he says that he and Lyons are friends. Lyons admitted that the defendant wasn't responsible. But is that enough, or are we looking for Ivory Lloyd was a witness to it and now he's come forward? Because it seems like everything else seems to be cumulative, like it's just layering on a new person talking to things that the defendant has already argued just through different witnesses. Well, certainly there are different degrees of evidence, some better, some stronger, some perhaps less so. Again, credibility can't be determined at this stage. That comes later. If Your Honor is concerned about hearsay, for example, I mean, sure, if we had an affidavit from Lyons, that would be much stronger. But hearsay is available as evidence to be presented in support of a post-conviction petition. In the briefs, I discussed the case of People v. Warren, the first district decision. I really meant more like something that was new. I mean, we all know that Lyons was there and that, you know, we all know that the defendant continually said he had no involvement. Right. Is there a requirement that it would take, you know, like somebody knew, like identifying that somebody knew was present or somebody knew, you know. I mean, first of all, I think it's in the eye of the beholder ultimately when it comes to a judge on post-conviction proceedings, hopefully hearing the witnesses, assessing credibility, saying is this enough for a new trial. At trial, of course, it is the trier of fact. Now, one thing that's very new here, because previously there had been affidavits claiming that Lyons was involved in planning the incident. The prior post-conviction petition affidavit said, oh, Lyons planned the incident, and this court on appeal previously said, okay, well, the fact may well be maybe Lyons planned it or directed it to be carried out, but that doesn't mean that Gibson was not involved. Here, though, we have something very new, which is a statement, if you believe Lloyd, by Lyons to Lloyd that Lyons did it and that Gibson had nothing to do with it. So that is very, very different from what has been presented previously. Thank you. Thank you, Your Honors. Thank you both for your arguments here today. This matter will be taken under advisement,